## 151. ATLANTIC COAST LINE RAILROAD COMPANY *v.* GOODWIN.

1. Loss of goods by wrong delivery negligently made by the carrier is a conversion, for which the carrier is liable to account at the full value of the goods.
2. Where a conversion is shown, the valuation of the property converted can not be fixed or limited by the bill of lading, nor will any deduction

for freight charges be allowed. The public policy of the State forbids and outlaws any contract which impairs the right of the shipper to be protected against the results of a carrier's negligence.

3. The charge of the court on the subject of the time for fixing the value of the goods not delivered might have been fuller, but was neither erroneous nor misleading.

Action for damages, from city court of Valdosta—Judge Smith. August 29, 1906.

Submitted February 26,—Decided March 2, 1907.

*Denmark & Griffin, Cranford & Walker,* for plaintiff in error.

*G. A. Whitaker,* contra.

Russell, J. There was but one question before the jury. There are two before us. The tree of amount, with gradually *lessening* branches growing from its trunk, is the only vegetation in the field of this case. The main stem of this legal twig was presented to the view of the jury by the court below, while the bifurcated branches of the same tree are presented for our consideration by the bill of exceptions. The single question before the jury, as submitted by the charge of the court, was the value of the goods lost by the defendant company. In other words, what was plaintiff's damage as shown and measured by the market value of plaintiff's property? The same question is before us, but with two prongs or ramifying branches. First, should the jury have been instructed to reduce their finding to the market value of scrap iron because the property received by the carrier was thus designated in the bill of lading? And secondly, should the finding of the jury have been lessened in amount by a deduction for the freight charges, and should the jury have been instructed accordingly by the court? The finding of the jury is not out of harmony with the charge of the court, and hence the double-headed question is presented to us in the two assignments of error embodied in the motion for new trial, as follows: (4) "Because the court erred in overruling defendant's objection to the following question, to wit: 'What was the real market value of said shafting, iron blanks, and screws at Valdosta, Georgia?' (the objection at the time being that plaintiff could not recover the real market value of said articles at Valdosta, but could only recover the market value of said articles at Valdosta as scrap iron) and permitting the witness, O. F. Goodwin, to answer the same, '2 cents per pound for said shafting, 2½ cents per pound for cast-iron blanks, and $12.50 each for 2 4" screws.'

Said property having been shipped as scrap iron, plaintiff could only recover the market value of scrap iron at point of destination." (5) "Because the court erred in charging the jury as follows: 'The court charges you that the plaintiff is entitled to recover the fair market value of the goods at Valdosta, the place of destination and at which they should have been delivered, at the time they should have been delivered;' the error being that this charge deprived defendant of any compensation whatever for hauling the goods,— the measure of damage being in such a case the fair market value of the goods at the place of destination, less the freight charges; and said charge is further erroneous because it does not state what time defendant would have in which to deliver said goods."

O. F. Goodwin brought suit against the plaintiff in error to recover damages in the sum of $80, alleging that he delivered 1,500 pounds of shafting, 1,000 pounds of cast-iron blanks, and two four-inch iron screws, ten feet long each, to the railroad company to be carried from Kinderlou, Georgia to Valdosta, Georgia; that the market value of said items at the time and place of delivery was, 2½ cents per pound for said cast-iron blanks, 2 cents per pound for said shafting, and $12.50 each for said iron screws; and that the railroad had failed to deliver them to the consignee. The defendant in the court below, the railroad company, denied all the allegations of plaintiff's petition, and pleaded that if the articles were shipped as alleged in plaintiff's petition, they were shipped as scrap iron, value $30, in order to obtain a low rate of freight; that the plaintiff accepted the bill of lading, and that he can not recover above the value of the articles specified in the bill of lading. At the trial the defendant admitted that by mistake the articles had been delivered to the Valdosta Foundry & Machine Company, and that thereby the defendant was due some amount to the plaintiff. That admission left but one issue to be tried, which was the question of value. On the trial of the case plaintiff's counsel asked the plaintiff what was the real market value, at Valdosta, of said shafting, said iron blanks, and said screws. Defendant objected to this question, upon the ground that plaintiff could only recover the market value of said articles as scrap iron, they being shipped as such, as shown by the bill of lading introduced in evidence. This objection was overruled, and the plaintiff was permitted to testify, that the shafting was worth 2 cents per pound, the cast-

iron blanks 2½ cents per pound, and the iron screws $12.50 each, making the sum of $80; that the cast-iron blanks were as good as new; and otherwise to testify as to the value of said articles as finished products, instead of as to their value as scrap iron. The defendant excepted to this ruling. The court charged the jury that the plaintiff was entitled to recover the fair market value of the goods at Valdosta at the time they should have been delivered. The jury found a verdict for the plaintiff in the sum of $80, the proved market value of the goods at the time and place of delivery. The only two assignments of error necessary to be considered or insisted upon are those hereinbefore set forth in the 4th and 5th grounds of the motion for new trial, which was overruled.

· It being admitted that the plaintiff was entitled to recover something, was the defendant entitled to have that amount determined by the terms of the bill of lading, and the proper amount thus obtained reduced by deduction of the freight charges from Kinderlou to Valdosta? The ruling of the court on the question as to the value of the articles, as well as the charge to the jury on that subject, entitled the plaintiff to recover (as he did) the fair market value of the goods at the place of destination at the time they should have been delivered, regardless of the bill of lading. We think there was no error in admitting the testimony, or in charging the jury in accordance with that testimony. It is well settled that public policy in our State forbids and outlaws any contract which will in any degree impair the right of the shipper to be fully protected against the results of the carrier's negligence. And this is likewise the ruling of the great majority of the authorities in our sister States. In the consideration of the bill of lading it might be remarked, in the first place, that the undisputed evidence shows that it was filled out by the agent of the company, in the absence of the plaintiff, without his knowledge or assent, and can well be disregarded in that it can not be held to be a contract *accepted by the plaintiff;* but we base our opinion, not upon this, but upon the strictly legal grounds afforded by former adjudications in this State. A common carrier can not lessen the measure of his liability for the conversion of goods by invoking an agreed valuation which the plaintiff might have made for the purpose of reducing the freight rate. We do not mean to hold, in contravention to the ruling in *Central Ry. Co.* v. *Murphey,* 113 *Ga.*

514, that there may not be contracts of agreement in which the liability of the company may be reduced in consideration of a lower rate of freight, but we do mean to hold that in any such case every essential ingredient necessary to constitute a contract must obtain. We follow the doctrine laid down by the Supreme Court in *S., F. & W. Ry. Co.* v. *Sloat,* 93 *Ga.* 803. And where the carrier arbitrarily fixes the value of a particular consignment, or where by the terms of a printed bill of lading there is an arbitrary fixing of value without regard to the real worth of the goods, the same will be treated as a mere attempt in advance to limit liability, and not a bona fide attempt to value the property shipped. A mere attempt to prearrange the amount of damage in case of loss will be disregarded. So will be limitations in the printed bill of lading stating that the company will not be responsible for loss of particular classes of goods beyond a specified amount. In most of the forms there is not even a pretense of valuation, but an express stipulation that the goods shall be taken as worth not more than a given sum, or that the company will not be liable beyond a given amount. Such stipulations are mere prearrangements as to the amount of damage, and will not be enforced, so as to exempt a negligent carrier from liability for the true value. *Wood* v. *Southern Express Co.,* 95 *Ga.* 452. And this is so whether the shipper merely accepts a bill of lading containing such stipulations, or assents thereto in writing. *Central Ry. Co.* v. *Murphey,* 113 *Ga.* 514.

It appears that the goods in this case were delivered to the wrong party. "Loss of goods by a wrong delivery, made negligently by the carrier, is a conversion for which the carrier is liable to account at the full value of the goods, this mode of loss not being within the terms of the special contract fixing a conventional value upon the goods at the time of shipment in consideration of the rate of freight being reduced." *S., F. & W. Ry. Co.* v. *Sloat,* 93 *Ga.* 803. So that we think that the court was right in admitting the evidence complained of, and in instructing the jury that the plaintiff was entitled to recover the true market value of the articles, rather than the value fixed by the bill of lading.

The second ground of the plaintiff in error's complaint is that the charge of the court instructed the jury to allow the plaintiff the full market value of his goods, without providing for the deduction of necessary and proper freight charges for their carriage from

Kinderlou to Valdosta. In the earliest case upon this subject in our State, *Cooper* v. *Young,* 22 *Ga.* 271, Judge McDonald, delivering the opinion of the court, lays down the following rule of liability: If a common carrier fail to deliver goods according to contract and they are lost, he is liable for the value of the goods at the place of destination, deducting freight. And this seems to have been considered the rule, except where freight was prepaid, as to freight *lost* in transit, this decision being approvingly cited in *Taylor* v. *Collier,* 26 *Ga.* 122, and *Rome R. Co.* v. *Sloan,* 39 *Ga.* 641. But it must be borne in mind that there is a wide difference between loss and conversion; and we hold the true rule to be that where a conversion by the carrier is shown, the plaintiff would be entitled to recover the full market value of the goods without any reduction for freight; and we therefore hold that the charge of the court of which complaint is made is not error. All of the earlier cases above referred to were cases of mere loss; and, as sustaining the difference between loss and conversion as affecting what may be called the equities between the parties, it may be well to consider the reasoning of Judge McDonald in the *Cooper* case. Says he: "The general rule is, that if a common carrier fail to deliver goods according to contract, he is liable for the value of the goods at the time and place at which he agreed to deliver them. The rule is an easy and simple one. It is just to the owner, and does no injustice to the carrier. . . In such cases the carrier deducts from the value at the place of destination the freight for transporting them and pays the balance. The owner gets his profit, and the carrier gets his freight." In *Rome R. Co.* v. *Sloan,* supra, the question was not involved. But where there has been a conversion, as held in 93 *Ga.* and also in 122 *Ga.,* supra, there is no deduction for the freight. In fact, to make such a deduction would be like the account of the well-digger for the well he did not dig.

It is not easy to determine from the petition whether it is a suit in contract or an action for damages arising from breach of duty. The petition is in fact a mere statement of the plaintiff's claim and the facts creating it, which claim is alleged to be damages. In *Central Ry. Co.* v. *Chicago Portrait Co.,* 122 *Ga.* 11 (1), it was held that "where a petition can be construed either as a suit in contract or as an action for a breach of duty arising out of the contract, the latter construction will be adopted." No objection hav-

ing been made to plaintiff's petition, the evidence adduced in support thereof will also justify a construction in accordance with the above-quoted rule. The evidence in this case showed that F. I. McRee, the agent of the Atlantic Coast Line Railroad Company at Kinderlou, issued the bill of lading, and that the plaintiff was not present at the time of shipping, and gave no instructions to ship the goods as scrap iron, and did not know they were so shipped until he received the bill of lading by mail; and under these undisputed facts, we hardly think it can be fairly contended that he ever made any such agreement for a reduced rate of freight as would make his insistence on the market value of his goods a fraud upon the carrier, as is insisted in the brief of counsel for the plaintiff in error; and furthermore, there was no ratification on his part or acceptance of the contract; because he never received the goods or paid the freight, so far as appeared from the evidence, in accordance with the lower rate of freight allowed on scrap iron. The plaintiff in error further contends that the jury should have been directed as to the time within which the defendant should deliver the goods; and cites us to *Rome R. Co. v. Sloan, 39 Ga.* 641, supra, fourth paragraph and citations therein made. We have heretofore referred to these cases, but nothing is contained in them with regard to the time of fixing the value. While the value should be fixed as of the time when the goods would ordinarily be delivered, still in this case, as was held by Chief Justice Brown in the case of *Sloan,* we fail to see how the plaintiff in error was injured. In that case the complaint was as to place, in this as to time; and as it was held there that the plaintiff in error could not justly complain, under the facts, as to the place, so it appears to us that the plaintiff in error here can not justly complain of any material injury from the judge's failure to instruct the jury as to the time of delivery, which should determine their valuation. On the same principle which was held by this court in *Southern Express Co. v. Briggs,* ante, 294, the jury could be presumed to know the distance between Valdosta and the near-by station of Kinderlou (both of which are in their own county), and the length of time it would probably take to convey freight by rail from the one place to the other; and it may be taken as a matter of common knowledge that there is no material variation in the price per pound of second-hand iron in the period of time which elapsed between the

purchase on February 8, which was the time when the plaintiff's testimony valued them, and the probable day or two which would be necessarily consumed in transporting this iron to Valdosta. We think that the difference in value would be so imperceptible as not to affect injuriously any substantial rights of the plaintiff in error; and while, as we have stated above, the judge should have instructed the jury more fully as to time, it would be useless on this ground to grant a new trial, to have the same verdict (as it should be) more technically rendered.            *Judgment affirmed.*